IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| vs. : | CRIMINAL NO. 06-397 |
| KAREEM H. MILLHOUSE, : | |
| Defendant. : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                                                                                    **February 1, 2008**

    Kareem H. Millhouse ("Defendant" or "Millhouse") was convicted by the Court of Attempted Aggravated Sexual Abuse,[1] Attempted Sexual Abuse,[2] Assault,[3] Attempted Escape[4] and Possession of a Dangerous Weapon in a Federal Facility[5] on November 14, 2007. Subsequently, Defendant filed at least twelve separate Motions, including this Motion for a New Trial.[6] For the reasons that follow, the Court dismisses Defendant's Motion and affirms its guilty verdict.

**I. FACTUAL AND PROCEDURAL HISTORY**

    Defendant was tried on September 18th and 19th of 2007 without a jury, on a five-

---

[1] 18 U.S.C. § 2241 (a).

[2] 18 U.S.C. § 2242 (1).

[3] 18 U.S.C. § 113 (a)(3).

[4] 18 U.S.C. § 751 (a).

[5] 18 U.S.C. § 930 (a).

[6] Doc. No. 98.

count indictment. At all times prior to trial, Millhouse was represented by Criminal Justice Act Panel counsel Rocco C. Cipparone, Esquire, an experienced and competent attorney. Prior to trial, Defendant requested a psychological evaluation,[7] which was conducted by the Bureau of Prisons, at Metropolitan Correctional Center in New York City. After a competency hearing, the Court found him competent to stand trial.[8] On the eve of trial, Defendant motioned the Court to proceed *pro se*.[9] After a lengthy colloquy, the Court granted Defendant's Motion to represent himself, appointing his prior attorney to act as backup counsel for the trial. The following day, jury selection was conducted. After several hours, Defendant made a belated motion to proceed to trial without a jury.[10] After the appropriate and full colloquy, the Court granted Defendant's motion, and dismissed the jury panel.[11]

During its case in chief, the Government presented numerous witnesses and exhibits, establishing the following facts, which the Court found beyond a reasonable doubt.[12] Preliminarily, the Court notes that the Defendant does not now, nor has he ever contended that the evidence supporting any of his charges was insufficient to prove his guilt, or that the verdict

---

[7] Doc. No. 68, Sept. 14, 2007 (noting this is only four days prior to his scheduled trial date).

[8] Competency Hr'g Tr. at 169, Sept. 17, 2007 (finding that "the government has proven beyond a preponderance of the evidence, which is their burden, that Mr. Millhouse is able to assist in his own defense, is capable of doing so, and has done so in some part").

[9] Competency Hr'g Tr. at 174 (stating "I ain't coming over here. If I come over, I'm representing myself").

[10] Trial Tr. at 69, Sept. 18, 2007 (The Court asked Defendant, "You would like to waive your right to a jury trial, is that correct?" The Defendant responded "Yes . . . . I'm ready to start. Ready to start, get it over with").

[11] See Doc. No. 77, Sept. 17, 2006; see also Trial Tr. at 70-86, Sept. 18, 2007 (The Court conducted a full colloquy, concluding that "we find that you have knowingly and voluntarily waived your right to a jury trial in this matter, and I will approve your waiver").

[12] The Court placed its Findings of Fact and Conclusions of Law on the Record. See Tr. of Verdict, Nov. 14, 2007. (incorporating by reference as if set out fully herein the Court's findings of fact and conclusions of law).

is against the weight of the evidence.

In May 2006, Defendant was indicted on unrelated felony charges, and was detained shortly thereafter at the Federal Detention Center in Philadelphia, PA. The Court appointed CK[13] as his attorney, from the Criminal Justice Act Panel. After meeting with CK several times at the Detention Center, Defendant agreed to attend a proffer session with the Government to discuss a potential cooperation agreement. On June 19, 2006, CK met with Defendant, Special FBI Agent Thomas A. Perzichilli, Agent Ed Gallant of the FBI, Assistant United States Attorney ("AUSA") Albert Glenn, and CK's associate, at the Green Federal Building.  Prior to the proffer session, CK and her associate asked for a moment alone with Defendant, which they were given, during which time Defendant was uncuffed. After several hours of the proffer, the parties agreed to a second proffer session to take place on July 7, 2006.

On July 7, 2006, Defendant was escorted in handcuffs and shackles, from the Detention Center to the Green Building and was again turned over to the custody of Agent Perzichilli. CK again asked for a moment alone with her client to review paperwork. However, her associate, who was ill that day, did not accompany her. Agent Perzichilli uncuffed Defendant and placed him on the far side of the table in the room, at the end closest to the door. Leaving AUSA Glenn just outside the door, Agent Perzichilli left the room on the fourth floor, to retrieve snacks and drinks for the Defendant on the eighth floor of the building, a few minutes away.

Inside the room, CK was seated next to Defendant, on the same side of the table, to facilitate their consultation and review of paperwork and evidence. Defendant then leaned

---

[13] The Court continues its practice to maintain the confidentiality of the victim in this matter.

close to CK and with an expression of calm intent stated "if you scream I will cut your throat."[14] CK then asked "what?" to which he responded, "if you scream, I will cut your throat." At the same time, the defendant moved his right hand back and forth near her neck in a menacing manner, with a razor blade in his hand. The razor blade was held between Defendant's thumb and forefinger. The defendant stated "do you see this? Do you see this?"[15] The razor blade was that of a plastic disposable razor, identical to those razor blades distributed to inmates at the FDC on the 8th Floor Special Housing Unit, where Defendant was in custody. CK attempted to regain control of the situation by maintaining her professional demeanor and reminding defendant of her good services as his attorney, but as she tried to convince him to calm down, he responded by saying, "lower your voice or I'll cut your throat. You see the thing is I haven't had sex in a while so here's what we are going to do . . . I want to have sex, but I want you to be able to leave here alive. I don't want to have to hurt you."[16]

       Defendant then lunged at CK with the razor blade, causing her to scream as she attempted to move around the end of the table towards the door. Before she could do so, Defendant grabbed her. With his hands on her neck, he threw her over the conference table. Screaming, she landed against the opposite wall, knocking her head into the wall, her knee and hands hitting the floor. Immediately after CK hit the wall screaming, Agent Perzichilli opened the door and entered the room. He was quickly followed by AUSA Glenn and Philadelphia Police Officer Robert Clark, at which point the defendant ran away from the door toward the

---

[14] Trial Tr. at 57, Sept. 19, 2007.

[15] Id. at 57-61, Sept. 19, 2007.

[16] Id.

windows at the opposite end of the room. Upon his entry to the room Agent Perzichilli witnessed CK's legs in the air, feet up and head going down toward the floor. He also observed defendant reeling back from her falling body. CK crawled out of the now open door to the hall on her hands and knees, in shock and bruised. She recovered her senses enough to call out to the officers that defendant had a razor blade so as to warn them to be careful. CK sustained bruises on her neck, knee, hand, back and right leg, and she later developed a headache. She was treated by a nurse on site for her injuries, which were documented in photographs. Her symptoms and bruises worsened over the next several days.

  Defendant then began to throw himself against the windows of Room 14, using his shoulder as a battering ram. Unable to break through a window, he grabbed a chair with metal legs located in the room and repeatedly hit the window with the chair legs. The Government introduced photographs documenting scrapes on the window surface consistent with the chair legs as they were thrust against the window. The windows did not break despite the force of defendant's efforts. Ignoring numerous commands to cease and desist, it was only when Federal Bureau of Investigation Agent John Hess pointed his .40 caliber sidearm at defendant that he submitted. Then he was handcuffed on the floor. Just after the altercation in Room 14 had ceased, Defendant stated "I wish you would have shot me." The officers thereafter recovered a razor blade under the trash can in the corner of the room closest to where the defendant and CK originally sat talking. CK later identified this evidence as the razor blade with which the defendant threatened her.

  The Defendant, who testified in his own behalf, admitted that he possessed the razor blade that was admitted into evidence as Government exhibit 4B. He claimed he had

secreted the blade inside his mouth between his lower lip and gums, and that the razor had fallen from his mouth while he was speaking with CK in the proffer room.  He obtained the blade several days earlier from a guard at the FDC who distributed the razor blade to Defendant while he was incarcerated in the Special Housing Unit of the FDC.  He further testified that when the razor blade accidentally fell from his mouth and landed on the floor of the proffer room, CK screamed and attempted to flee, but fell as she tried to run from the defendant.  While Defendant denied his earlier statement that he had hidden the razor blade in the hem of his undershirt, he agreed that this was the moment that Agent Perzichilli and other law enforcement officials entered the proffer room, and that was when the defendant ran to the window area of the room and attempted to break the window.

    After hearing this evidence, the Court made the determination that the witnesses for the Government were credible and candid, but found Defendant to be less than truthful.  The Court concluded that the Government proved each and every element of the charges of attempted aggravated sexual abuse, attempted sexual abuse, attempted escape, assault and possession of a dangerous weapon in a federal facility beyond a reasonable doubt, and found the Defendant guilty on November 14, 2007.  The Court entered its findings of fact and conclusions of law on the Record.[17]

    Defendant subsequently filed this timely Motion for New Trial, as a *pro se* litigant.  After this Motion was filed, Defendant filed another Motion for Counsel, and was afforded his previous counsel, who was granted leave to supplement or to amend Millhouse's *pro*

---

[17] Tr. of Verdict, Nov. 15, 2007.

*se* motion for a new trial, but who has declined to submit a brief in support of the Motion.[18] In fact, Defendant's re-appointed counsel has specifically declined to adopt the Motions filed by the Defendant. Nevertheless, this Court will, in an abundance of caution, address Mr. Millhouse's claims.

In his Motion for New Trial, Defendant raises, *inter alia*, that he was: 1) wrongfully found to be competent; 2) never given notice of a hearing; 3) denied access to the legal library at the Detention Center; 4) not able to "communicate rationally" with his counsel; 5) paid only two visits from his attorney; 6) prosecuted as an act of retaliation by the Government, "to clone and decode" him, stating "this was a perfectly planned persecution and the Court thanked all of its participants;" 7) refused transcripts; 8) denied his right to a jury trial; 9) that the Court "knew all of the jurors" and; 10) that the Court had an outstanding "warrant of arrest" on it.[19]

## II. DISCUSSION

This Court has discretion to order a new trial and set aside the verdict of the Court when justice so requires, if "[the Court] ascertains that the verdict constitutes a miscarriage of justice. . . or any error of sufficient magnitude to require reversal on appeal."[20] Thus, only in rare circumstances will this Court issue a new trial. Defendant has not demonstrated that such circumstances exist. His assertions are addressed *seriatim*, as follows.

**A. Competency to Stand Trial**

Defendant first asserts that the Court erred in finding him competent to stand trial.

---

[18] See attached letter of Rocco Cipparone, Esquire, dated January 30, 2008.

[19] Doc. No. 98; Def's Mot. for New Tr.

[20] United States v. Broadus, No. 04-61, 2004 WL 2473422, *2 (E.D. Pa. Nov. 2, 2004).

While the Government presented a qualified, credible expert to testify that Defendant was competent, Defendant presented no contradicting evidence.[21] The Court ordered a competency evaluation after a belated Defense request on the eve of the first scheduled trial date. The Bureau of Prisons at Metropolitan Correctional Center in New York City, conducted the comprehensive evaluation of Defendant. Dr. Elissa Miller, who spent several days with Defendant and administered numerous tests, found Defendant competent to stand trial, and noted his attempts to feign mental incompetency when it suited him.[22] At a hearing held prior to the second trial date, this Court accepted Dr. Miller's opinion and report, concluding Defendant was competent to stand trial.[23]

As further support for this finding, Defendant represented himself at trial, conducting cross-examination, posing objections, testifying on his own behalf, and making several arguments for his innocence.[24] His performance was logical and responsive to the arguments of the Government, the statements of witnesses, and those of the Court. Thus, the Court cannot set aside its verdict based on an assertion of incompetency.

**B. Notice of Proceedings and Preparation**

Defendant's second challenge to his verdict alleges that he was never given notice

---

[21] See Competency Hr'g Tr.

[22] Competency Hr'g Tr. at 69. Dr. Miller diagnosed Defendant with "malingering," which she defined as "an intentional exaggeration of symptoms to evade criminal responsibility".

[23] Id. at 28-32. Dr. Miller concluded that the Defendant was competent to stand trial, after he rationally defined his charges, explained the various roles of lawyers and the legal system, elaborated on his plea options, defined the oath witnesses take, spoke about the case against him and the civil charges he wished to file against the Bureau of Prisons, and said nothing to her to indicate that he would be incapable of cooperating with his attorney.

[24] The Court incorporates the Record from the September 17, 2007 competency proceedings [Doc. No. 76] and the reasons stated on the Record for the ultimate determination of competency.

of his hearings. This claim is frivolous. All court appearances and hearings are scheduled well in advance with notice provided to all parties and counsel. On the first day of trial Defendant chose to proceed *pro se*.[25] He was given adequate notice of every hearing and proceeding held in this Court. Defendant presents no evidence to the contrary. In addition, at all times leading up to the day he chose to proceed *pro se*, his attorney was prepared to defend him at trial.[26] An untimely claim that he was unprepared and unnoticed is, to this Court, a clear attempt to thwart justice. In fact, Defendant specifically stated that he *was* prepared to proceed to trial *pro se*.[27] This Court will not grant a new trial on this contradictory and meritless assertion.

Next, Defendant claims he was denied access to the legal library at the Detention Center. Again, Defendant chose to proceed *pro se* on the night before trial, representing to this Court that he was prepared to represent himself at trial. The Court has no control over the rules and procedures of the Federal Detention Center, nor their hours of library operation. Defendant presents no information to substantiate his claim. An alleged failure to conduct legal research within the fifteen hours after Defendant elected to represent himself at trial not only contradicts

---

[25] Id. at 174-79. At the conclusion of the competency hearing, after the Court found Defendant competent to stand trial, Defendant stated repeatedly "I'm ain't coming over here. If I come over, I'm representing myself . . . . I'm not coming over here . . . . Like the trial can go on without me being here. Y'all been doing whatever y'all want this far . . . . I'm not coming over here. They going to have to drag me . . . . This trial don't mean nothing to me. Like, it ain't going to make no difference . . . . I don't feel like coming over here early in the morning." The Court asked the Defendant if he was prepared to represent himself, to which he stated "Don't make no difference, do it? . . . . I mean, yeah, I'll represent myself . . . . I just told you, I really don't care." When the Defendant represented that he would prepare that night, the Court asked "Are you telling me you are not prepared to represent yourself?" The Defendant answered "No, I'm prepared." The Court then conducted the full colloquy and found that, although ill-advised, Defendant was competently, knowingly, willingly and intelligently making the decision to proceed *pro se.*

[26] His attorney litigated the United States' Motion in Limine [Doc. Nos. 35, 38, 39]; he presented argument and cross-examination during Defendant's competency hearing; prepared proposed jury instructions; and contacted the Bureau of Prisons to allow him to visit Defendant at the FDC on many occasions.

[27] See supra, n. 25.

his assertions that he was ready to proceed, but also leads to no conclusion that the Court committed error.

### C. Ineffective Assistance of Counsel

Defendant's fourth and fifth claims relate to purported inadequacies of his court appointed counsel. As Defendant elected to proceed with trial without his counsel, these claims cannot support any grant of relief. Mr. Cipparone recounted on the Record several times his visits with Defendant at the FDC, and his total willingness, preparedness and ability to represent the Defendant. The Court reminded the Defendant of the same. Defendant's choice to discard his court-appointed legal representation cannot now be used to bolster these meritless arguments. This Court's observations throughout the course of these proceedings were that Defense counsel was professional, prepared, and diligent.

### D. Remaining Claims

Defendant's additional claims that the prosecution was a result of inappropriate retaliation, that the Court denied his right to a jury trial, and that the Court knew all the jurors are likewise meritless. Defendant presents no evidence of retaliation, bad faith, misconduct or otherwise in support of his assertions. In addition, Defendant elected halfway through the voir dire selection to proceed to trial without a jury. Thus, juror bias cannot be a basis for granting Defendant's Motion for New Trial. Defendant elected to waive his right to trial by jury, and cannot now claim that he was denied this right.

Defendant also argues that he was denied access to trial transcripts by the Court. However, Defendant's Motion for Transcripts [Doc. No. 80] was granted by this Court on

October 10, 2007.[28]  Thus, this claim is meritless.

Finally, Defendant claims this Court should order a new trial because there is "an outstanding arrest warrant" upon it.  The Court is unaware of the basis for this assertion.  Defendant served unfounded claims of bias against this Court, properly addressed by the Court's Order on October 29, 2007.[29]  In addition, this Motion cannot serve to avoid or even to delay the sentencing of Defendant for his crimes, for which this Court has found him guilty beyond a reasonable doubt.

### III. CONCLUSION

The Court observes that Millhouse, in most of his claims, attempts to raise issues that contradict the Record, and contradict his prior motions and requests memorialized by the now voluminous Record.  His serial filings have been diligently and respectfully treated by opposing counsel, his own counsel, and this Court, as will be any future filings in this matter.  However, the frivolous and dilatory nature of Millhouse's motions and appeals cannot support the relief that he most obviously seeks–to be relieved of criminal responsibility for attacking an innocent victim.

For the foregoing reasons, Defendant's Motion for New Trial is Denied.  An appropriate Order follows.

---

[28] Doc. No. 81.

[29] Doc. No. 86.  The Court dismissed Defendant's unfounded "Motion to Remove the Judge From the Courthouse."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| vs. : | **CRIMINAL NO. 06-397** |
| : | |
| **KAREEM H. MILLHOUSE,** : | |
| : | |
| Defendant. : | |

### ORDER

**AND NOW**, this 1st day of February, 2008, upon consideration of Defendant's Motion for a New Trial [Doc. No. 98], and the Government's Response [Doc. No. 101], it is hereby

**ORDERED** that Defendant's Motion is **DENIED, DISMISSED,** and **OVERRULED**.

Sentencing is hereby scheduled for **February 15th, 2008, at 10:00 a.m.**

It is so **ORDERED**.

BY THE COURT:
/s/ Cynthia M. Rufe

_____
**CYNTHIA M. RUFE, J.**