**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO. 06-397 |
| | : | |
| v. | : | CIVIL ACTION NO. 09-1951 |
| | : | |
| KAREEM H. MILLHOUSE | : | |

_____

<u>**MEMORANDUM  AND ORDER**</u>

**RUFE, J.**                                                              **August 16, 2012**

After a non-jury trial at which he represented himself, Petitioner Kareem H. Millhouse

was convicted of attempted aggravated sexual abuse, attempted sexual abuse, attempted escape,

assault, and possession of a dangerous weapon in a federal facility.  Petitioner now seeks relief

pursuant to 28 U.S.C. § 2255.

**I.      FACTUAL AND PROCEDURAL HISTORY**

While facing charges in a criminal case pending in this District before the Honorable Juan

R. Sánchez,[1] Petitioner met with his court-appointed attorney in a conference room in the

William J. Green Federal Building in Philadelphia.  Petitioner threatened the attorney with a

razor blade he had smuggled out of the Federal Detention Center ("FDC"), assaulted the attorney,

and tried to break a window in an attempt to escape.  Petitioner was charged with the crimes of

which he was eventually convicted and the case was assigned to this Court.

Until shortly before trial, Petitioner was represented by Criminal Justice Act Panel

counsel Rocco C. Cipparone, Esquire, an experienced and competent attorney, who also

represented Petitioner in the case before Judge Sánchez.  Petitioner, through counsel, requested a

_____

[1] <u>United States v. Millhouse</u>, Criminal Action No. 06-285.

psychological evaluation,[2] which was conducted by the Bureau of Prisons at Metropolitan Correctional Center in New York City.  The Court held a competency hearing on September 17, 2007, and found Petitioner competent to stand trial.[3]  After this ruling, Petitioner sought to represent himself at trial, and following a lengthy colloquy, the Court granted Petitioner's Motion to proceed *pro se*, and appointed Mr. Cipparone to act as stand-by counsel for the trial.  The next day, during *voir dire*, Petitioner decided to proceed to trial without a jury.[4]  After a full colloquy, the Court granted Petitioner's motion, and dismissed the jury panel.[5]

The case was tried on September 18 and 19, 2007, and after an opportunity for the prosecution and defense to submit briefing, the Court announced findings of fact and conclusions of law and found Petitioner guilty of all charges at a hearing on November 14, 2007.  After his conviction, counsel was again appointed to represent Petitioner in connection with his sentencing, and a new attorney was appointed to represent Petitioner on appeal.  On direct appeal, Petitioner, through counsel, argued that the evidence was insufficient to convict him because Petitioner's intention was not to assault his attorney and escape, but to commit "suicide by cop," in other words, acting in the hope that the officers responding to the conference room would be forced to shoot Petitioner.  This argument, which was not raised before this Court (although Petitioner at times implied he may have been trying to commit suicide by jumping

---

[2] Doc. No. 68, Sept. 14, 2007 (four days before the scheduled trial date).

[3] Hr'g Tr. Sept. 17, 2007 at 169 (finding that "the government has proven beyond a preponderance of the evidence, which is their burden, that Mr. Millhouse is able to assist in his own defense, is capable of doing so, and has done so in some part").

[4] Trial Tr. Sept. 18, 2007 at 69 (The Court asked Petitioner, "You would like to waive your right to a jury trial, is that correct?" The Petitioner responded "Yes . . . . I'm ready to start. Ready to start, get it over with").

[5] Trial Tr. Sept. 18, 2007 at 70-86 (The Court conducted a full colloquy, concluding that "we find that you have knowingly and voluntarily waived your right to a jury trial in this matter, and I will approve your waiver").

from the window), was rejected by the Court of Appeals, which affirmed the judgment of conviction and sentence.

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[6]  "Habeas corpus relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[7]  "The question of whether to order a hearing is committed to the sound discretion of the district court.  In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. . . ."[8]

## III.   DISCUSSION

In his petition and later submissions, Petitioner alleges the following grounds for relief: 1) ineffective assistance of counsel; 2) judicial misconduct; 3) denial of the right to confront an

---

[6] 28 U.S.C. § 2255(a).

[7] United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989).

[8] Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) (citation omitted).  See 28 U.S.C. § 2255(b).

accuser; 4) trial being held in this venue when the charged crime occurred in the Federal Building next to the Courthouse; 5) inadequate psychological evaluation; 6) denial of the right to present all evidence during the competency hearing; 7) denial of speedy trial; 8) denial of counsel; 9) insufficient evidence; 10) denial of polygraph test; and 11) lack of jurisdiction to prosecute.

### A.     Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in Strickland v. Washington.[9]  Under Strickland, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced petitioner.[10]  Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[11]  Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[12]  For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[13]  Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome

---

[9] 466 U.S. 668 (1984).

[10] Id. at 687.

[11] Id. at 690.

[12] Lewis v. Horn, 581 F.3d 92, 106-07 (3d Cir. 2009).

[13] Singletary v. Blaine, 89 F. App'x 790, 794 (3d Cir. 2004) (citing Moore v. Deputy Comm'r of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir.1991)).

would have been different in the absence of such errors.[14]

Petitioner argues that he decided to represent himself because Mr. Cipparone was ineffective for not communicating with him.  The record, however, belies this contention.  At a hearing on May 10, 2007, after a request by Petitioner to disqualify his counsel, Petitioner was given the opportunity to state reasons for his dissatisfaction with Mr. Cipparone's representation. Petitioner did not believe counsel was communicating with him, and expressed his unhappiness with counsel's decision to seek a continuance of the trial.  During the hearing, counsel for the Government left the courtroom so that Mr. Cipparone's communications with Petitioner could be discussed without revealing trial strategies.[15]

Mr. Cipparone explained his extensive written communications with Defendant, and his willingness, preparedness, and ability to represent Petitioner.[16]  Counsel explained that the continuance had been requested, in part, because of the complexity of Petitioner's other criminal case.[17]  Mr. Cipparone also described his attempts to visit with Petitioner at the FDC, which were made more difficult by Petitioner's refusal to comply with FDC regulations to change his prison uniform before visits.  Following this discussion, and at the conclusion of the hearing, Petitioner agreed that he wanted Mr. Cipparone to continue to represent him.[18]  The record is clear that Mr. Cipparone communicated with and attempted to work with Petitioner.  If anyone refused to

---

[14] <u>Strickland</u>, 466 U.S. at 694.

[15] Hr'g Tr. May 10, 2007 at 22-23.

[16] Hr'g Tr. May 10, 2007 at 16-17.

[17] Hr'g Tr. May 10, 2007 at 23-24.  Mr. Cipparone also represented Petitioner in the other case.

[18] Hr'g Tr. May 10, 2007 at 40-41.

cooperate, it was Petitioner.

Petitioner again raised his unhappiness with counsel's representation at the competency

hearing on September 17, 2007, claiming that counsel had not communicated with him.  The

Court concluded that to the extent Mr. Cipparone had been unable to meet with Petitioner, the

fault lay with Petitioner's refusal to cooperate with FDC regulations.[19]  Mr. Cipparone had

presented argument and cross-examination during Petitioner's competency hearing, had prepared

proposed jury instructions, and was ready to defend Petitioner at trial.  Petitioner has not shown

that Mr. Cipparone's representation was in any way ineffective, and because Petitioner's claimed

dissatisfaction with his counsel was explored thoroughly on the record before trial, a hearing on

this issue is not necessary.

### B.      Judicial Misconduct

Petitioner argues that the Court should not have permitted him to represent himself at

trial, that he did not have access to legal materials during trial, and that he was denied the right to

present witnesses.  On appeal Petitioner, although represented by new counsel, did not raise any

arguments with regard to his self-representation at trial.  Because collateral review under § 2255

is not a substitute for direct review, Petitioner has procedurally defaulted all claims that he failed

to raise on direct appeal, unless there is a valid cause for the default, as well as prejudice

resulting from the default.[20]  Petitioner has not shown either cause or prejudice, and these

arguments are unsupported by the record and provide no grounds for relief.

---

[19] Hr'g Tr. Sept. 17, 2007 at 170.

[20] Bousley v. United States, 523 U.S. 614, 621-22 (1998).

On the eve of trial, Petitioner had expressed his dissatisfaction with counsel's representation, but because there was no basis upon which to remove counsel, Petitioner was given the choice to proceed to trial with Mr. Cipparone representing him or to represent himself.[21]  Petitioner chose the latter course and, after a full colloquy with the Court, which explored whether Petitioner had the ability to represent himself, the risks inherent in doing so, and the nature of the charges and maximum penalties he faced, Petitioner was permitted to proceed *pro se*.[22]  Part of the hearing was conducted outside the presence of counsel for the Government, to avoid revealing any potential defense strategies.[23]  The Court also appointed Mr. Cipparone to serve as stand-by counsel.[24]  The next day, before the start of trial, the Court confirmed that Petitioner still wished to represent himself.[25]

Petitioner asserted his desire to proceed *pro se* clearly and unequivocally, had been held competent to stand trial, and was fully apprised of the "nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved."[26]  There was no good cause to replace Mr. Cipparone with another attorney, and the Court was bound to accept

---

[21] Hr'g Tr. Sept. 17, 2007 at 182.

[22] Hr'g Tr. Sept. 17, 2007 at 174-206.

[23] Hr'g Tr. Sept. 17, 2007 at 198-202.

[24] Hr'g Tr. Sept. 17, 2007 at 207.  Mr. Cipparone later represented Petitioner in connection with the sentencing proceeding, where he advocated for Petitioner, and where the Court imposed a sentence partially consecutive to the sentence imposed by Judge Sánchez in the other criminal case, instead of the fully consecutive sentence sought by the Government.

[25] Trial Tr. Sept. 18, 2007 at 3.

[26] United States v. Booker, 684 F.3d 421, 426 n.4 (3d Cir. 2012) (quoting United States v. Peppers, 302 F.3d 120, 132 (3d Cir.2002)) (emphasis omitted).

Petitioner's unequivocal determination to represent himself.[27]  Petitioner also fails to explain

what legal documentation he needed at trial, and as discussed below, the Court excluded the

witnesses Petitioner sought to call because their proposed testimony was not properly admissible.

> **C.    Inadequate Psychological Evaluation/Inability to Present Witnesses at Competency Hearing**

Petitioner did not raise on direct appeal any arguments relating to the competency

determination, and has not shown cause and prejudice for this failure. The day before trial, the

Court held a competency hearing, following a defense motion filed several days earlier.  The

Court had approved funds to have Petitioner evaluated by two experts selected by the defense.

At the competency hearing, Mr. Cipparone declined to present evidence, explaining that:

> I do not anticipate presenting any evidence either today or at trial from either of
> those persons.  I have communicated to Mr. Millhouse months ago the reasons for
> my tactical and strategic determinations that presenting that would not fit in with
> at least my assessment of trial strategy at this point.[28]

Mr. Cipparone also explained that Petitioner's unwillingness to comply with FDC

regulations regarding changing clothes before visits meant that one of the defense experts was

unable to evaluate Petitioner.[29]  The Court had called the FDC in an effort to accommodate the

defense evaluation.[30] In the wake of these difficulties, the Government arranged for, and the

Court approved, a comprehensive evaluation of Petitioner's mental competency at the Bureau of

Prisons at Metropolitan Correctional Center in New York City.

---

[27] Peppers, 302 F.3d at 132.

[28] Hr'g Tr. Sept. 17, 2007 at 13.

[29] Hr'g Tr. May 10, 2007 at 9-10; Hr'g Tr. Sept. 17, 2007 at 13-14.

[30] Hr'g Tr. May 10, 2007 at 11.

At the competency hearing, the Government presented the testimony of Dr. Elissa Miller, who spent several days with Petitioner and administered numerous tests.  Dr. Miller concluded that Petitioner was competent to stand trial and that Petitioner's claims of symptoms of mental illness were feigned.[31]  Dr. Miller noted that Petitioner was able to define the charges against him and was well-versed in legal terminology.[32]  This Court accepted Dr. Miller's opinion and report, concluding Petitioner was competent to stand trial.[33]

Contrary to Petitioner's contention, he was given a full opportunity to present evidence at the competency hearing.  Petitioner himself testified, and the Court specifically inquired as to whether there was anything else Petitioner wanted to say about the issue of competency.[34]  There is no factual basis for Petitioner's claim, and because all of the relevant facts are of record, no hearing is necessary.[35]

### D.      Remaining Claims

Petitioner's remaining claims require little discussion.  The only claim raised on appeal was that of sufficiency of the evidence.  The Court of Appeals held that the evidence was indeed

---

[31] Hr'g Tr. Sept. 17, 2007 at 34, 69-70. Dr. Miller diagnosed Petitioner with "malingering," which she defined as "an intentional exaggeration of symptoms to evade criminal responsibility," and with "antisocial personality disorder," a personality characteristic that did not prevent Petitioner from being competent to stand trial.

[32] Hr'g Tr. Sept. 17, 2007 at 28-32. Dr. Miller concluded that Petitioner was competent to stand trial, after he rationally defined his charges, explained the various roles of lawyers and the legal system, elaborated on his plea options, defined the oath witnesses take, spoke about the case against him and the civil charges he wished to file against the Bureau of Prisons, and said nothing to her to indicate that he would be incapable of cooperating with his attorney.

[33] Hr'g Tr. Sept. 17, 2007 at 33.

[34] Hr'g Tr. Sept. 17, 2007 at 159.

[35] Petitioner attached to a supplemental filing what appear to be medical records from 2008.  See Doc. No. 220.  The Court finds that these documents have no relevance to Petitioner's competence at the time of trial.

sufficient to convict Petitioner, and this Court is bound by that ruling.[36]

The other issues were not raised on appeal and no cause for that failure has been shown. The Court further finds that the claims are without merit and do not require a hearing.  First, Petitioner was not denied his right to a speedy trial: the Court complied with the Speedy Trial Act, and the originally-scheduled trial date had been continued at the request of Petitioner's counsel for good cause shown.[37]  Petitioner's disagreement with counsel's strategic decisions does not warrant relief; counsel requested additional time, in part, to pursue possible psychological testing.[38]

With regard to the evidence at trial, Petitioner argues that two witnesses would have testified as to Petitioner's mental capacity, but he does not explain how this testimony would have affected the trial, particularly in light of the finding that Petitioner was competent.  At trial, Petitioner stated that he wanted to call as a witness Andre Henry, who had been in detention with Petitioner before the events of trial, to testify as to Petitioner's intentions and state of mind; in other words, that Petitioner did not intend to sexually assault anyone.[39]  The Court held that the testimony would be inadmissible as Mr. Henry could testify only as to what Petitioner may have told him in a self-serving declaration that constituted inadmissible hearsay; Mr. Henry could have no first-hand knowledge of what Petitioner intended to do.[40]  Petitioner also sought to call

---

[36] This Court also independently concluded the evidence was sufficient in finding Petitioner guilty and in denying the motion for a new trial.

[37] Hr'g Tr. May 10, 2007 at 3.

[38] Hr'g Tr. May 10, 2007 at 8.

[39] Trial Tr. Sept. 19, 2007 at 176-77.

[40] Trial Tr. Sept. 19, 2007 at 182.

Bienvenado Morales, who had provided a statement to the Government to the effect that Petitioner had planned to escape, but not to sexually assault his attorney.[41]  The statement was before the Court, but the proposed testimony was excluded, because Mr. Morales could not establish what was or was not Petitioner's intent, and therefore the testimony would not tend to illuminate the issues being tried.[42]

Petitioner also argues that the Government wrongly cross-examined him with a statement he gave before being apprised of his Miranda rights and improperly used the statement of informant Nelson Figueroa but did not have him available for cross-examination.  During the cross-examination of Petitioner, counsel for the Government asked whether Petitioner had told a cell mate, Mr. Figueroa, about the possibility of escape from the Federal Building.[43]  The questions, to which Petitioner did not object, were for the purposes of impeachment, and Petitioner did not seek to call Mr. Figueroa as a witness. Even if the questions about what Petitioner told Mr. Figueroa were improper, the error was harmless in light of the strong evidence of Petitioner's guilt.  Petitioner's final evidentiary assertion is without merit, as he had no right to a polygraph examination, the results of which likely would not have been admissible at trial in any event.[44]

With regard to the jurisdiction and venue, Petitioner cannot assert a jurisdictional defect because "all federal courts have jurisdiction to hear criminal cases arising under federal

---

[41] Trial Tr. Sept. 19, 2007 at 185.

[42] Trial Tr. Sept. 19, 2007 at 187-88.

[43] Trial Tr. Sept. 19, 2007 at 167-68.

[44] See United States v. Castillo, No. 96-430, 1997 WL 83746 (E.D. Pa. Feb. 18, 1997).

statutes."[45]  Venue was properly lodged in this District because the crime occurred in

Philadelphia on federal property, and although the William J. Green Federal Building adjoins the

Courthouse, the proximity of the crime scene to the Courthouse is irrelevant.[46]

Finally, although it is unclear from his submissions, to the extent that Petitioner argues

that his appellate counsel was ineffective for failing to raise any of these issues on appeal, the

Court concludes that Petitioner cannot show prejudice, because there is no merit to the claims.

## IV.  CONCLUSION

The evidence of Petitioner's guilt was overwhelming, and Petitioner was competent to

stand trial and to represent himself.  The petition will be denied without a hearing.  Because

Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate

of appealability shall not be issued.[47]

---

[45] United States v. King, 604 F.3d 125, 139 (3d Cir. 2010).

[46] United States v. Pendleton, 658 F.3d 299, 302-03 (3d Cir. 2011) ("As a defendant in a criminal trial,
[Petitioner] has a constitutional right to be tried in the district where his crime was committed.  Congress may fix
jurisdiction in any district where a 'crucial element' of the crime is performed.") (quoting United States v. Perez, 280
F.3d 318, 329 (3d Cir. 2002) (citing U.S. Const. amend. VI and U.S. Const. art. III, § 2, cl. 3)).  Here, all of the
crucial elements of the crime occurred within the Eastern District of Pennsylvania.  The Court notes that because an
Assistant United States Attorney from this District was a witness, the Attorney General appointed as special
attorneys to prosecute the case attorneys from the Office of the United States Attorney for the District of New Jersey,
which was proper.  See 28 U.S.C. § 515.

[47] See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Pursuant to Local Appellate
Rule 22.2, at the time of a final order denying a habeas petition, a district judge is required to determine whether a
certificate of appealability should issue.  Such a certificate should not be issued unless "reasonable jurists could
debate whether . . . the petition should have been resolved in a different manner or that the issues presented were
adequate to deserve encouragement to proceed further."  Id. at 484 (internal quotation marks omitted).